UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| JOSHUA HERRIDGE, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 3:18-CV-00160 |
| § | |
| CITY OF GALVESTON, TEXAS, *et al*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND ORDER

Before the Court is the Amended Motion for Preliminary Injunction filed by the Plaintiff, Joshua Herridge ("Herridge"). Dkt. 37. Having reviewed the motion, the response, the reply, the parties' evidence, and the applicable law, the Court **ORDERS** that the motion be **DENIED**.

### Factual Background

In 2015, 2016, 2017, and 2018, Herridge traveled to Galveston, Texas to preach using a loudspeaker at the annual Mardi Gras parade. During these years, Galveston had a municipal ordinance in effect (the "Ordinance"), which made it "unlawful for any person to operate a loudspeaker or amplifier without a permit issued by the city manager" and allowed the city manager to "revoke any such permit after issue." Dkt. 37-1 at Appx.015. Each year Herridge attempted to preach, he was either asked to stop using his loudspeaker because he did not have a permit, or his permit was revoked. *See* Dkt. 37 at 6, 8-9.

Herridge filed this suit against the City of Galveston ("City") and its manager and marshal, alleging that the Ordinance violated the First Amendment and the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *See* Dkt. 1. Subsequently, the City revised the Ordinance. In the preamble to the Ordinance, the City states that the revisions were necessary because enforcement of the Ordinance had "proven difficult due to provisions which are vague and ambiguous." *See* Dkt. 37-1 at Appx.029. The City also states that the revisions were made to address "deficiencies" in the Ordinance to clarify when permits are required, how sound is measured on the receiving property, and "what noise is unlawful." *See id*.

Section 24-5 of the Ordinance as revised establishes 1) when a permit is required and 2) volume restrictions for permit holders. The Ordinance provides in pertinent part:

> Sound amplification permits are required for any loudspeaker or amplifier uses which are not part of the ordinary normal day-to-day operations of a legally operating commercial business or governmental facility for which the loudspeaker is placed in the interior of the business or government facility. The decibel restrictions listed in section 24-2 [which prohibits sound in excess of 75 decibels from 7:00 am to 10:00 pm and in excess of 70 decibels from 10:00pm to 7:00am] shall apply to legally operating commercial businesses and loudspeaker permit holders….

Galveston, Texas, Municipal Code § 24-5.

The Ordinance also establishes the permit application procedure and the circumstances under which officials may revoke a permit.

> …The application for a permit for the use of loudspeakers or amplification shall be submitted to the city manager or his designed[sic] department at least ten (10) working days in advance of the planned use…A person desiring such permit shall pay a fee of twenty-five dollars ($25.00) for a single day of use and fifty dollars ($50.00) for multiple days of use to the city….

> …
>
> …The city manager or a law enforcement officer responding to a complaint about excessive noise may revoke any such permit after issue when consistent with public health, safety and welfare and as necessary to promote the public business; or when the loudspeaker device is used to harass or intimidate members of the public; or when the loudspeaker device is used to amplify language which by very utterance tends to incite an immediate breach of the peace. The city manager may make exceptions to the prohibited hours provisions in subsection (b) and the decibel restrictions listed in section 24-2.

*Id*.

Finally, the Ordinance establishes the factors officials will consider in deciding whether to make exceptions to the hour and sound level restrictions for permit holders:

> In determining whether to allow an exception to the prohibited hours, the city manager will consider such things as the public health, safety and welfare of the citizens; the need to authorize use of a loudspeaker or amplifier during those hours to promote the public business; the days and times for which the loudspeaker or amplifier permit is requested, or whether the time requested occurs during a special festival or events such as Mardi Gras or Dickens on The Strand; the proximity of the location of the loudspeaker permit to residential areas; and whether or not the loudspeaker permit will be at a location in the downtown district or in another area of the city.

*Id*.

In the pending motion, Herridge argues that, despite the revisions, the Ordinance is still unconstitutional, both facially and as applied. *See* Dkt. 36. Specifically Herridge argues that the Ordinance should be enjoined pending final resolution of his lawsuit because it (1) "[premises] revocation of [a] permit on subjective and vague standards"; (2) gives City officials "unbridled discretion" to grant or deny permits and make

exceptions to hour and volume restrictions for permit applicants; and, (3) unconstitutionally burdens speech by "requiring [a] 10-working-day notice and $25 Fee" to apply for a permit. *See* Dkt. 37 at 2. An evidentiary hearing was held regarding the motion. For the reasons discussed below, the Court denies Herridge's motion for preliminary injunction.

## Analysis

The Fifth Circuit has cautioned repeatedly "that injunctive relief is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985). In order to receive such relief, the movant has the burden of demonstrating: (1) a substantial likelihood that it will prevail on the merits, (2) a substantial threat that it will suffer irreparable injury if the injunction is not granted, (3) that its threatened injury outweighs the threatened harm to the party whom it seeks to enjoin, and (4) that granting the preliminary injunction is in the public's interest. *PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005). If a movant fails to carry the burden "on any one of [these] four prerequisites a preliminary injunction may not issue, and if issued, will be vacated." *Anderson v. Douglas & Lomason Co.*, 835 F.2d 128, 133 (5th Cir. 1988).

### A. Substantial Likelihood of Success on the Merits

Herridge has not demonstrated a substantial likelihood that he will be successful in having the Ordinance declared unconstitutional as vague or as an impermissible burden on his right to free speech. "A statute can be impermissibly vague for either of two

independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Chicago v. Morales*, 527 U.S. 41, 56-57 (1999). "Courts are inclined to adopt that reasonable interpretation of a statute which removes it farthest from possible constitutional infirmity." *Kovacs v. Cooper*, 336 U.S. 77, 85 (1949).

One reason Herridge asserts that the Ordinance is unconstitutional is because it allows the City to revoke a permit when "consistent with public health, safety and welfare;" "as necessary to promote public business;" or when the loudspeaker device is used to "harass or intimidate" members of the public. Dkt. 37-1 at 17-22. Herridge argues that the quoted language above is unconstitutionally vague and creates an unconstitutional "heckler's veto" based on the content of the speech. Dkt. 37 at 18-19. In support of this argument, Herridge cites a number of cases where courts have granted injunctions because a statute's language was found to be unconstitutionally vague. *Id.*

However, Herridge's argument is based on an incomplete and selective reading of the Ordinance. Unlike in the cases cited by Herridge, the alleged vague language appears to be qualified by an ascertainable standard—in this case a finding of the presence of "excessive noise"— that defines and limits the City's ability to revoke a permit. *See Gaughan v. City of Cleveland*, No. 1:05 CV 180, 2005 U.S. Dist. LEXIS 29862, at *24-26 (N.D. Ohio 2005).[1] As the Ordinance provides in pertinent part:

---

[1] As the court held, "It is important to note that the constitutional vice in *Coates* rested partly on the ordinance's unqualified use of the term 'annoying.' See *Robinson v.*

> …The city manager or a law enforcement officer responding to a complaint *about excessive noise* may revoke any such permit after issue when consistent with public health, safety and welfare and as necessary to promote the public business; or when the loudspeaker device is used to harass or intimidate members of the public; or when the loudspeaker device is used to amplify language which by very utterance tends to incite an immediate breach of the peace.

Galveston, Texas, Municipal Code § 24-5 (emphasis added). What constitutes "excessive noise" can be determined by reference to the Ordinance's hour and decibel restrictions, which also provide an ascertainable method for measuring the noise level of a loudspeaker. *See* Galveston, Texas, Municipal Code § 24-2.

At the evidentiary hearing and in its pleadings, the City stated that a finding of the presence of "excessive noise" is required before a permit can be revoked. Herridge offered no evidence that the City has ever revoked a permit without determining the presence of excessive noise. Arguably, this qualification of the alleged unconstitutionally vague Ordinance language gives persons of ordinary intelligence fair notice of the prohibited conduct. *See e.g. Munn v. City of Ocean Springs*, No. 1:12CV97-LG-JMR, 2012 U.S. Dist. LEXIS 120289, at *10-11 (S.D. Miss. 2012) (court declined to issue preliminary injunction of ordinance that prohibited noises which are "unreasonably loud,

---

*Township of Waterford,* 883 F.2d 75, 1989 WL 94569, at *4 (6th Cir. 1989) (stating that the Coates ordinance was struck down on vagueness grounds because 'the word annoy was the only word used to define or limit the offense'). The ordinance in *Coates* failed to provide individuals with any ascertainable standard to determine whether their conduct would 'annoy' passers-by. Here, the very language of § 683.01(a) reveals that the term 'annoy' is not unqualified. Rather, the City of Cleveland has limited the reach of § 683.01(a) by prohibiting the playing of a sound device in a manner or at a level that would 'annoy…the quiet, comfort or repose of neighboring inhabitants.'"

raucous or jarring," and which "annoy[],disturb[], injure[] or endanger[] the peace of a reasonable person.").

Another reason Herridge asserts that the Ordinance is unconstitutional is because it gives officials "unbridled discretion" to grant or deny permits or exception requests regarding the hour and decibel restrictions. However, at the evidentiary hearing the Court received uncontroverted evidence establishing that under the Ordinance as revised 1) anyone who applies for a permit is granted one upon fully and accurately completing the application form and payment of the permit fee, 2) Herridge has never been denied a permit, 3) Herridge has never been told that his permit application would be denied, and 4) Herridge has never had a permit revoked. Furthermore, the Ordinance clearly sets out the basis upon which exceptions to the restrictions can be granted and Herridge presented no evidence establishing that these criteria are merely "vague platitudes." Dkt. 37-1 at 23.

Finally, Herridge asserts that the Ordinance should be enjoined because it unconstitutionally burdens his speech by "requiring [a] 10-working-day notice and $25 Fee" to apply for a permit. However, the City presented evidence that this fee is proportionate to other City administrative fees and that the notice requirement was reasonable in light of potential public safety concerns. *See Marcavage v. City of N.Y.*, 918 F. Supp. 2d 266, 274 (S.D.N.Y. 2013) (upholding a sound amplification device ordinance, which required permit applicants to apply 5 days in advance and pay a 45-dollar fee).

Merely incorporating ascertainable standards into an ordinance that contains unconstitutionally vague terms does not "magically take [the ordinance] out of the realm

of scrutiny." *Munn*, at *10-11 (S.D. Miss. 2012). Likewise mere recitations regarding the stated purposes of an ordinance do not automatically render the ordinance constitutional. However, in order to grant a preliminary injunction, the Court must be convinced that Herridge is substantially likely to succeed on the merits of his claim. The Court makes no finding regarding the constitutionality of the Ordinance at the present time. The Court does find, however, that at this point Herridge has at best shown a possibility that the Ordinance might be unconstitutionally vague; he has not clearly demonstrated that it is substantially likely his challenge to the Ordinance will be successful. Herridge must clearly carry the burden of persuasion on all four requirements in order to be entitled to a preliminary injunction. As Herridge has failed to meet this requirement, the motion must be denied. Nevertheless, the Court will briefly address the remaining requirements for a preliminary injunction below.

### B. Substantial Threat of Irreparable Injury

Herridge has failed to make a sufficient showing that he "will suffer [an] irreparable injury if [an] injunction is not granted." *See PCI Transp., Inc.*, 418 F.3d at 545. The loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction." *Palmer v. Waxahachie Indep. Sch. Dist.*, 579 F.3d 502, 506 (5th Cir. 2009). However, courts are cautioned against enjoining a statute based on assumptions of "how [an ordinance] will be applied and determin[ing] its constitutionality in that setting." *Beckerman v. Tupelo*, 664 F.2d 502, 515 (5th Cir. 1981). Therefore, a movant seeking a preliminary injunction on First Amendment grounds must do more than suggest that an ordinance may violate the

Constitution in future hypothetical scenarios. Rather, the movant must make a clear showing that the ordinance, as written, will necessarily cause irreparable harm to the movant if it is not enjoined.

Here, Herridge has made no such showing. A full evidentiary hearing was held on this motion. At the hearing, Herridge provided no evidence clearly showing that he would be denied a permit if he applied for one. In fact the City produced evidence to the contrary. Herridge also provided no evidence that if a permit was issued to him that it would be revoked. Herridge's fear of arbitrary and discriminatory treatment alone does not a provide a basis for establishing that he will suffer an irreparable injury if he is not granted emergency relief. Accordingly, on this additional basis the motion must be denied.

**C. The Balancing of Harms and the Public's Interest**

Because Herridge has failed to substantiate his claims of threatened injuries, he has not demonstrated that the threatened injuries outweigh the harm to the City if it is enjoined from enforcing the Ordinance. Noise ordinances such as this are meant to secure an appropriate noise level in the communities they govern. The public's interest in keeping its noise regulation scheme intact is great and will not be disturbed absent evidence that doing so will infringe on First Amendment rights.

Finally, Herridge has not established that an injunction of the Ordinance's enforcement would be in the public interest of Galveston's citizens. Again, the Court does not make a determination regarding the constitutionality of the noise ordinance at

this juncture, but under these circumstances, the Court is not convinced that emergency injunctive relief is appropriate. Accordingly, the motion is denied.

## Conclusion

For the foregoing reasons, the Court **DENIES** Herridge's Amended Motion for Preliminary Injunction. Dkt. 37. Accordingly, the Ordinance will remain in place pending final resolution of this dispute.

SIGNED at Galveston, Texas, this 4th day of February, 2019.

George C. Hanks Jr.
United States District Judge